**Application of the UNITED STATES for Relief.**

**No. 24616.**

United States Court of Appeals, Ninth Circuit.

May 18, 1970.

Robert S. Linnell, U. S. Atty., Las Vegas, Nev., Michael DeFeo, U. S. Dept. of Justice, Washington, D. C., for the Government.

Franklin Rittenhouse, Las Vegas, Nev., Karl Berolzheimer, William J. Winger, Duane A. Feurer, Chicago, Ill., for Central Tel. Co. of Las Vegas.

Before HAMLEY, BROWNING and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Pursuant to 18 U.S.C. § 2518, a provision of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Act), 82 Stat. 211–225, 18 U.S.C. §§ 2510–2520, the United States applied to the United States District Court for the District of Nevada for an order authorizing the interception of the wire communications of named individuals from specified telephone numbers. The Government also asked that The Central Telephone Company of Nevada (company) and an officer of the company be directed to furnish at established rates such facilities, services and assistance as are required by the Federal Bureau of Investigation, acting under the authorization, to effectuate the interception.[1]

Prior to submitting the application to the district court the Government informally asked the company whether it would consent to the entry of such an order. The company responded that it would not voluntarily cooperate in such an interception. At the request of the district court, attorneys for the company and the Government appeared at an *in camera* hearing on the Government's application. At that hearing the company adhered to its position as stated above.

Thereafter the Government submitted to the district court a revised proposed order. This order would have directed the company to provide services and facilities as described above or, in the alternative, to show cause why it would not do so. The district court entered an order denying the application, holding: (1) the Act does not authorize a judge to compel a communications carrier to

---

1. Under the proposed order the facilities, services and assistance which the company would be directed to supply would include, but not be limited to, leased lines and connecting wires or bridges.

serve and assist the Federal Bureau of Investigation in carrying out the interception of wire communications applied for by the Government and approved by a court; and (2) in view of this lack of authority, if the proposed order were signed and the company elected to comply therewith, the company or its officers and employees would be subject to prosecution for a gross misdemeanor under Nevada law, namely NRS 200.610–200.690.

This appeal followed.[2] We called for briefs and, at the request of the Government, an *in camera* oral argument was held. The following questions were presented: (1) Is the company a party to this proceeding? (2) Does this court have jurisdiction to entertain the appeal and, if not, should the merits be reached by regarding the proceeding as an application for a writ in the nature of mandamus? (3) Did the district court have authority, in the exercise of its discretion, to order the company to cooperate in the interception of wire communications, assuming approval of the proposed interception were granted the Government? and (4) Is the Act unconstitutional insofar as it enables a court to authorize or approve the interception of a wire communication?

In view of the result we here reach it is not necessary to decide the first and last of these four questions.

■ Turning to the second question, pertaining to the jurisdiction of this court, the Government readily concedes that the Act does not expressly authorize an appeal from such a district court order. The only provision in the Act expressly authorizing appeals in connection with wire interceptions is that contained in 18 U.S.C. § 2518(10) (b). This provision specifically authorizes appeals by the United States from orders granting a motion to suppress made under section 2518(10) (a), and from or-

ders denying an application for an "order of approval." We agree with the Government that the denials there referred to are denials of applications for approval made pursuant to section 2518(7) where, for emergency reasons, the Government has proceeded with an interception prior to obtaining court approval. The review proceeding now before us does not fall in either of these categories.

The Government points out, however, that section 2518(10) (b), expressly providing for appeals by the Government as described above, starts out with the words, "In addition to any other right to appeal * * *." Based thereon, the Government argues that it has a right to appeal under 28 U.S.C. § 1291, giving courts of appeals jurisdiction of appeals from all final decisions of the district courts. In the event we should conclude that this appeal is not authorized by section 1291, the Government asks us to treat its opening brief as an application under the All Writs Act, 28 U.S.C. § 1651, for a writ in the nature of mandamus.

We have some doubt whether the order sought to be reviewed is final in the sense contemplated by section 1291. The Government presented its application in the district court in such a way as to indicate that it was not interested in obtaining approval of the proposed wire interception unless the court would also direct the company to cooperate in effectuating the interception. The result was that, since the court decided not to order such cooperation, it did not reach the question of whether it should authorize the interception. In view of this posture of the case, if we should decide that the district court did have authority to compel such cooperation, it may turn out to be an inoperative decision because, upon remand, that court

---

2. A protective order was entered in this court providing that the record, briefs and all other papers lodged in this court

be retained under seal until further order of this court. A similar order had been entered in the district court.

may determine not to approve the interception.[3]

Our doubt concerning the applicability of section 1291 also gives us pause with regard to the alternative request that we entertain the review as a mandamus proceeding under section 1651.

On the other hand, there is room for argument that, under the particular circumstances of this case, the Government was warranted in believing that it would be futile to ask for approval of the interception unless the assistance of the company could also be compelled. On this supposition, the trial court's denial of the latter request was truly dispositive of the Government's entire application, and therefore was a final decision. We frequently review district court decisions denying relief upon a particular ground, even though other grounds upon which the court might have denied relief, were not passed upon by the district court.

We also recognize that there is a substantial public interest in obtaining an early and authoritative determination of the unique and important questions presented on the merits, not only for the purpose of this case, but also for the general guidance of federal law enforcement agencies and, in the event amendatory legislation may be sought, for the assistance of the Congress. Accordingly, we have concluded to resolve the above-described doubts in favor of jurisdiction and therefore hold that this review may be entertained under section 1291.

As stated above, one ground upon which the district court relied in refusing to direct the company to serve and assist the Federal Bureau of Investigation in effectuating a judicially-approved interception of wire communica-tions, was that the Act does not authorize a judge to enter such an order.

The Government acknowledges that Title III of the Act contains no specific provision conferring such a power. It argues, however, that this is not dispositive. The power to compel the cooperation of the telephone company, the Government urges, must be the concomitant of the power to authorize the interception, for without the former the latter is worthless.

The Government points to the Congressional findings, in section 801(c) and (d) of the Act, 82 Stat. 211, that the interception of wire communications "is an indispensable aid to law enforcement and the administration of justice," and that such interception should be allowed "only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court." The Government argues that, implicit in these findings, is the conclusion that a corporation or a person ought not to be permitted to "negate" the overriding legislative purpose and that the authorizing court must have the power to insure the effective execution of its orders.

The Government reminds us of the ancient principle, still recognized and applied, that law enforcement officers may assemble a *posse comitatus*, whereby private citizens may be required to help the police to keep the peace, and to pursue and arrest law violators.[4] The Government argues that this same principle authorizes courts, if not law enforcement officers, to require a regulated telephone company to cooperate with the Federal Bureau of Investigation in furtherance of judicially-approved interception activity. The Government, believing that such an order would be in aid of the ju-

3. If we were to decide that the district court has authority to direct the company to cooperate, it may also, upon remand, decide that it ought not to exercise that authority in this case, because of lack of need or for some other reason. However, we do not regard this possibility as depriving the district court decision of final-ity since that court's determination that it lacked authority to enter such a direction is just as final as if, conceding authority, it found such relief inappropriate for some other reason.

4. See Babington v. Yellow Taxi Corporation, 250 N.Y. 14, 164 N.E. 726 (1928).

risdiction of the district court in acting upon applications for approval of the interception of wire communications, asserts that the district court may, pursuant to 28 U.S.C. § 1651, issue a writ in the nature of a mandatory injunction requiring the company to cooperate.

At the outset of our discussion of these contentions, it is useful to note what this case does *not* involve. The Federal Bureau of Investigation is not seeking the aid of the company to apprehend a known law breaker. Rather, suspecting that a crime is being committed, it asks that the company be compelled to help it investigate the suspected criminals. Neither the company nor any of its employees are threatening to interfere with any wire communication interception which may be approved, either by searching out and removing taps, or otherwise. All the company is saying is that it will not voluntarily cooperate in effectuating such interceptions. Finally, we are not called upon to determine whether the company may voluntarily assist in effectuating the interception, but only whether it may be compelled to assist in that undertaking.

As before indicated, the Government recognizes that Title III of the Act contains no specific provision conferring upon district courts the power to compel telephone companies to assist federal law enforcement officers in making approved interceptions. The Government's entire case rests upon what it believes may be implied from the Act, and upon other general principles summarized above.

Title III of the Act is rather extensive, containing ten sections, some quite lengthy. It purports to constitute a comprehensive legislative treatment of the entire problem of wiretapping and electronic surveillance, complete with extensive introductory Congressional findings. The provisions contained in Title III state, in precise terms, what wiretapping and electronic surveillance is prohibited, and what is permissible. As to the latter, meticulous provision is made with respect to the necessity and manner of obtaining prior or subsequent judicial approval, the use which may be made of intercepted information, the way in which aggrieved persons may test the validity of the interception, and the collection and transmission to Congress each year of information concerning such activity.

In view of the breadth and apparent selfsufficiency of this general statute, and the total absence of any provision even hinting that the court is to have authority to enter such a unique order as the Government here seeks, we think the existence of such authority is not lightly to be implied from the Act. Nor do we find any provision in the Act, or in the history of its enactment, which points in the direction of implied authority. Quite to the contrary, consideration of the constitutional significance of the legislation, the relevant provisions of the Act, and the legislative history tend in the opposite direction.

Title III deals with a subject which directly affects the right of privacy in the matter of telephone communications, a right protected under the Fourth Amendment. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). If the Act is to survive a constitutional challenge, a question which we do not here reach, it can only do so by giving the Act as limited a construction as is warranted by the language used. The construction which the Government would give Title III, however, whereby an important judicial power not expressly provided for, would be implied, manifests not a limited, but an expansive, reading of the Act.

Nor, insofar as the record before us would indicate, is the implication of such a power necessary in order to give the Act any room for operation. It may or may not be true that, in this particular case, it is an absolute impossibility for the Federal Bureau of Investigation to effectuate the desired interception for which approval was sought, without the active assistance of the company. But it is common knowledge that there can be, and frequently has been, wiretapping of

# 644

telephone lines without the assistance or even the knowledge of the telephone company. For all that the Act and its legislative history disclose, Congress meant to limit approved interceptions to those which could be accomplished without the active assistance of the carrier, or at least to those in which that assistance would be forthcoming on a voluntary basis.

The legislative history indicates that Congress was abundantly aware of the physical difficulties involved in effectuating non-observed wiretapping and electronic surveillance (114 Cong.Rec. No. 88, May 22, 1968, p. 56107). Nor did Congress forget that telephone facilities would be involved in accomplishing such interceptions. See 18 U.S.C. § 2511(1) (b) (i); Senate Report No. 1097, 90th Cong. 2d Sess.1968, p. 2180. The Congressional findings set forth in section 801 of the Act, at the head of Title III, show an intent to define with utmost particularity the circumstances and conditions under which an interception may be effectuated. This intent is also manifested in the Senate Report referred to above, at p. 2153.

Congress thus acted advisedly when it formulated and enacted the legislation incorporated in Title III. It was fully aware of the physical problems involved in making investigative wiretaps, but it was nevertheless determined to enact a carefully circumscribed Act. In this setting it omitted any reference to a judicial power to require communication carriers to assist. We must conclude that the omission was purposeful, or at least that it remains unexplained on any basis which would warrant recognition of such a power by implication.

We are not convinced that the authority which the Government would have the court exercise, to compel a telephone company to assist in the investigation of suspected law violators can be derived, by analogy, from the power law enforcement officers may have to assemble a *posse comitatus* to keep the peace and to pursue and arrest law violators.

Nor do we find, outside Title III, any district court authority, statutory or inherent, for entry of such an order. We think the district court correctly decided that it was without power to grant the relief requested. If the Government must have the right to compel regulated communications carriers or others to provide such assistance, it should address its plea to Congress.

Affirmed.