In the Matter of the Application of the United States of America for an Order Authorizing the Use of a Pen Register/Touch-Tone Decoder on the Telephone Line Bearing the Number 305–921, etc.

SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY (SOUTHERN BELL), Defendant-Appellant,

v.

UNITED STATES of America, Plaintiff-Appellee.

In the Matter of the Application of the United States of America for an Order Authorizing the Use of a Pen Register/Touch-Tone Decoder on the Telephone Line Bearing the Number 305–920, etc.

SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY (SOUTHERN BELL), Defendant-Appellant,

v.

UNITED STATES of America, Plaintiff-Appellee.

Nos. 74–3357, 74–3358.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1976.

Edward J. Atkins, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Grafton B. Wilson, II, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, THORNBERRY,* Circuit Judge, and MILLER,** Associate Judge.

JOHN R. BROWN, Chief Judge:

Appellant Southern Bell Telephone and Telegraph Company (Southern Bell), appeals from two orders issued by the District Court of the Southern District of Florida pursuant to F.R.Crim.P. 41,[1] requiring

---

* Judge Thornberry was a member of the panel that heard oral arguments but due to illness did not participate in this decision. These cases are being decided by a quorum. 28 U.S.C. § 46(d).

** Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. F.R.Crim.P. 41 provides, in part:

(a) Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located, upon request of a federal law enforcement officer or an attorney for the government.

Southern Bell to furnish the Drug Enforcement Administration of the United States (DEA) all information, facilities and technical assistance necessary to install and operate a Pen Register/Touch Tone Decoder (pen register).[2] Because the orders have been complied with and the Decoder searches have been finished, we dismiss this appeal as moot.

On September 4, 1974, the District Court issued two orders,[3] based on the applications of an agent of the DEA, authorizing the installation of a pen register on the telephone lines of two specific subscribers[4] for a period of 30 days or until the information sought was obtained, whichever was the first to occur. The orders also required Southern Bell to "furnish the Drug Enforcement Administration all information, facilities, and technical assistance necessary to conduct the operation of the pen register/touch-tone decoder unobstrusively and with a minimum of interference with the service the subscriber may be receiving."

On September 9, 1974, the United States moved for an order to show cause why two officers of Southern Bell should not be held in contempt for their refusal to give the Government technical assistance in the installation of the pen register, as they were required to do by the September 4 orders.[5] In response to the District Court's order to show cause, Southern Bell filed a motion to reconsider or withdraw its previous orders or in the alternative to eliminate Southern Bell from the requirements of the orders. In support of its motion, Southern Bell argued (i) that if the orders had been issued pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. §§ 2510–2520, the orders were defective because they did not contain the required authorization from the Attorney General;[6] (ii) that if the orders were issued pursuant to F.R.Crim.P. 41, they were defective because that Rule does not authorize the Court to direct persons other than "a civil officer of the United States authorized to enforce or assist in enforcing any law thereof" to carry out the provisions and requirements of a search warrant;[7] (iii) that if the orders were issued pursuant to F.R.Crim.P. 41, they were further defective in that they did not relate to search for or seizure of "property" within the meaning of Rule 41(h)[8] and (iv) that the orders were

*(b) Property Which May Be Seized with a Warrant.* A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense.

*(h) Scope and Definition.* This rule does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made. The term "property" is used in this rule to include documents, books, papers and any other tangible objects. The term "daytime" is used in this rule to mean the hours from 6:00 a. m. to 10:00 p. m. according to local time. The phrase "federal law enforcement officer" is used in this rule to mean any government agent, other than an attorney for the government as defined in Rule 54(c), who is engaged in the enforcement of the criminal laws and is within any category of officers authorized by the Attorney General to request the issuance of a search warrant.

2. This device records all the numbers placed on the line by a calling subscriber while the telephone is in an off-hook position, by monitoring the line for the electrical impulses or tones placed on the line by the subscriber's manipulation of the telephone instrument in dialing another subscriber or in signaling the called party once the connection is established. By placing a recording unit into the device, conversations could also be intercepted, but the Orders did not authorize such interception.

3. The orders did not identify the authority pursuant to which they were issued.

4. Both orders are identical, except that each deals with a different telephone number.

5. The alleged failure of Southern Bell to render aid and technical assistance to the government agents is a matter disputed by the parties, but mooted by the Court's September 13 order finding that Southern Bell was not in contempt.

6. *See* 18 U.S.C.A. § 2516.

7. *See* note 9, *infra.*

8. *See* note 1, *supra.*

not required to be executed within 10 days as required by Rule 41(c).[9]

Upon consideration of the record and Southern Bell's motion and accompanying memorandum of law, the District Court entered an order dated September 13 finding that Southern Bell should not be held in contempt. The order also modified the September 4 order in several respects. First, it stated that the Court's authority to enter the September 4 order was not founded upon Title III, but upon F.R.Crim.P. 41, which authorizes a Federal Judge to issue search warrants. Second, it shortened the period of the order to the 10 days allowed by Rule 41(c). Finally, the order stated that, since "the Court is authorized to order the installation of a pen register [under F.R.Crim.P. 41], the Telephone Company's concern for its exposure to civil liability should be alleviated. With the removal of this obstacle and in light of their past cooperation, the Court has no reason to believe that the company will not furnish the requested technical assistance which will permit the Government agents to execute the court order."

Although Southern Bell promptly complied with the District Court order, it filed a motion to stay and a motion for clarification of the September 13 order. We denied the motion to stay, but granted the motion for clarification and remanded the case to the District Court, without ruling on the jurisdiction of the District Court to order a pen register installation under F.R.Crim.P. 41 and without ruling on the jurisdiction of the District Court to order the assistance of Southern Bell in installing and operating such a pen register under Rule 41. Upon

remand, the District Court stated that the September 13 order relieved Southern Bell of the obligation to assist the DEA in the installation of the pen register, since the telephone company was placed in the same position as any other citizen whose premises the Government seeks to search pursuant to a search warrant.[10]

After this appeal was filed by Southern Bell to resolve the legal issues underlying the ordering of the use of pen registers by District Courts pursuant to F.R.Crim.P. 41, the orders were renewed and extended for ten day periods on three different occasions, and each time, Southern Bell complied with the orders. The orders have since expired, however, and Southern Bell is not currently operating under any similar orders. With the case in this posture, any opinion we would render would be a mere advisory opinion, since we conclude that this case is moot.

### Mootness

In *DeFunis v. Odegaard,* 1974, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164, 168–69, the Supreme Court stated that the starting point for determining whether a case is moot

"is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in this case before them.' *North Carolina v. Rice,* 404 U.S. 244, 246, 30 L.Ed.2d 413, 92 S.Ct. 402 (1971). The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or

---

9. F.R.Crim.P. 41(c) provides, in part:

   The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property specified.

10. Southern Bell has submitted the affidavit of Howard M. Robertson, the Security Manager for the Southeast Florida area of Southern Bell. Mr. Robertson's affidavit, which is not contro-

verted by the Government, makes clear that regardless of the District Court's clarification order stating that Southern Bell was not required to render technical assistance to the Government, it is virtually imperative that Southern Bell do so as a practical matter, in order to prevent disruption of telephone lines and damage to telephone company property which might result from the unassisted installation of a pen register by a Government agent possibly untrained or unfamiliar with the operation or maintenance of Southern Bell's electronic switching systems.

controversy.' *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964); see also *Powell v. McCormack,* 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Sibron v. New York,* 392 U.S. 40, 50 n. 8, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

\* \* \* [u]nder Art. III '[e]ven in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction.' *North Carolina v. Rice,* supra, at 246, 30 L.Ed.2d 413."

In recent years, the Fifth Circuit has on several occasions held causes moot—for example,

"when the allegedly offending action was rescinded, see *Barron v. Bellairs,* 5 Cir., 496 F.2d 1187 [1974] (new Georgia welfare statute enacted prior to entry of injunctive relief),—when the proof failed to show the complaining party was or would be injured by the challenged actions of the defendant, see *National Lawyers Guild v. Board of Regents,* 5 Cir., 490 F.2d 97 (injunction requiring use of college facility for meeting held moot where meeting date set had long gone by and no showing was made that required co-sponsorship by college dean had been sought or refused); and *Merkey v. Board of Regents,* 5 Cir., 493 F.2d 790 (where plaintiff was a non-student at the time of appeal and no student was shown to seek recognition for a college club, the action demanding recognition was moot—Judge Goldberg dissented),—and when the matter in controversy has become passe, see *De Simone v. Lindford,* 5 Cir., 494 F.2d 1186 (request for injunctive relief pending completion of administrative review held moot upon final agency decision); *United States Servicemen's Fund v. Killeen Independent School District,* 5 Cir., 489 F.2d 693 (right to use a high school auditorium for a 'Counter-USO Show' by Viet Nam war protesters held moot after the conflict ended); and *Hollon v. Mathis Independent School District,* 5 Cir., 491 F.2d 92 (injunction suspending a school rule against married athletes mooted by plaintiff's graduation). Reference to these holdings and the authorities they cite suffices for articulation of the underlying legal principles."

*Gooden v. Mississippi State University,* 5 Cir. 1974, 499 F.2d 441, 443–44.

In the case now before the Court, the matter in controversy has become passe, because Southern Bell has complied with all the orders of the District Court and all the orders have now expired. Their controversy is not a live one at this time, so we cannot resolve this matter or give effective relief to either party.

Neither does this case fall within the limited exception to the mootness doctrine of cases which are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 1911, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316.[11] That

---

11. The following cases are illustrative of cases found by the Supreme Court to fall within the *Southern Pacific* exception. *See, e. g., Bd. of School Comm'rs v. Jacobs,* 1975, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74; *Gerstein v. Pugh,* 1975, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54; *Sosna v. Iowa,* 1975, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532; *Super Tire Eng'r Co. v. McCorkle,* 1974, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1; *Storer v. Brown,* 1974, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714, *reh. denied,* 417 U.S. 926, 94 S.Ct. 2635, 41 L.Ed.2d 230; *Brown v. Chote,* 1973, 411 U.S. 452, 93 S.Ct. 1732, 36 L.Ed.2d 420; *Rosario v. Rockefeller,* 1973, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1, *reh. denied,* 411 U.S. 959, 93 S.Ct. 1920, 36 L.Ed.2d 419; *Doe v. Bolton,* 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, *reh. denied,* 410 U.S. 959, 93 S.Ct. 1410, 35 L.Ed.2d 694; *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, *reh. denied,* 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694; *Dunn v. Blumstein,* 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274; *Moore v. Ogilvie,* 1969, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1; *Carroll v. President & Comm'rs of Princess Anne,* 1968, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325; *Southern Pacific Terminal Co. v. ICC,* 1911, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed.2d 310. In other cases, either because the possibility that the same party would be subjected to the same action again was too remote, or because effective review was possible, the Supreme Court held that the exception did not apply. *See, e. g., Weinstein v. Bradford,* 1976, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350; *Preiser v. Newkirk,* 1975, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272; *DeFunis v. Odegaard,* 1974, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164; *Diffenderfer v. Central Baptist Church, Inc.,* 1972, 404 U.S. 412, 92 S.Ct. 574, 30

exception has been restricted by the Supreme Court "to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 1975, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353. *See also Sosna v. Iowa,* 1975, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532.

The case at bar does not meet the *Southern Pacific/Weinstein* test, for even should Southern Bell be subject to similar orders in the future (a contingency which may or may not occur), we have concluded that full and effective appellate review of the order will be possible prior to the cessation or expiration of the challenged District Court order. Here, as in *DeFunis,*[12] where this

exception was also urged by the parties, there is no reason to suppose that the issues raised by Southern Bell will in the future evade review, provided timely steps are taken in the District Court and in this Court and, equally important, provided this Court recognizes its duty to take available steps to assure review. In the past, we have denied Southern Bell's motions for stays of the District Court's orders, out of an experience-based judgment that interlocutory appeals[13] or interim stays often do not serve to advance the case. However, without criticizing our previous denials of motions to stay, this abortive case serves to convince us that special consideration should be given by us and by the District Court in future similar cases.

As the use of the pen register as a surveillance tool has grown, and as courts in different jurisdictions have responded with

---

L.Ed.2d 567; *Hall v. Beals,* 1969, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214.

**12.** When faced with a similar claim by a law student who, about to graduate from law school, was attacking the admission procedures of the school, the Supreme Court found that the case did not meet the requirements of the exceptions set forth in *Southern Pacific, supra,* and in *Roe v. Wade, supra:*

> It might also be suggested that this case presents a question that is "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and is thus amenable to federal adjudication even though it might otherwise be considered moot. But, * * * just because this particular case did not reach the Court until the eve of the petitioner's graduation from Law School, it hardly follows that the issue he raises will in the future evade review. If the admissions procedures of the Law School remain unchanged, there is no reason to suppose that a subsequent case attacking those procedures will not come with relative speed to this Court, now that the Supreme Court of Washington has spoken. This case, therefore, in no way presents the exceptional situation in which the Southern Pacific Terminal doctrine might permit a departure from "[t]he usual rule in federal cases . . . that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated." *Roe v. Wade,* supra, at 125, 93 S.Ct. at 712, 35 L.Ed.2d 147; *United States v.*

*Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

*DeFunis, supra,* 416 U.S. 312, 318–19, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164, 170.

**13.** The interlocutory appeal statute, 28 U.S.C.A. § 1292(b) is on its face applicable only to civil appeals:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Because we have available the remedy of a stay of a District Order pending review, it is unnecessary for us to decide whether the controversy between DEA and Southern Bell, during the period the District Court order is in effect, amounts to a civil action for the purposes of § 1292(b). We note, however, that that controversy has all the trappings of a civil, rather than a criminal, action, despite the fact that the District Court's September 4 order was issued pursuant to a Governmental criminal investigation.

differing voices to the legal issues posed by its use,[14] we have become increasingly aware that we—and the District Court in acting on stays pending review—must still the clamor in the Fifth Circuit by taking the steps necessary in the future to make sure that the controversy reaches us while it is still alive. Thus, in any future case raising these issues, absent a substantial representation by the Government that delay would frustrate the Government's legitimate investigative efforts, the District Court should seriously consider a stay to permit review on an emergency basis by this Court. At the same time, we are acutely aware of our own responsibilities to expedite the appeal of any future case raising these issues while a stay order is in effect.

The law cannot ignore indefinitely the plight of a party in Southern Bell's precarious situation—damned by potential civil liability if it does comply with the District Court's order and damned by a possible contempt citation if it does not. The mere possibility that Southern Bell will be under a similar order in the future, however, will not justify our issuance of what would be, after all, merely an advisory opinion. Our resolution of the legal issues raised here must await some future date, when the issues reach us embodied in the facts of a living controversy. For, much as we would like to free Southern Bell from the uncertainties which confront it, neither the Constitution nor common sense will allow us to

resolve a dispute which has—temporarily, at least—resolved itself.

DISMISSED AS MOOT.

14. At least four different courts have spoken to the legal issues presented by this case. *In re Application of the United States,* 1976, 2 Cir., 538 F.2d 956, held that a District Court has the authority under F.R.Crim.P. 41 to approve the installation of a pen register, but that a District Court may not order the telephone company to assist agents in installing the device. In *United States v. Illinois Bell Tel. Co.,* 7 Cir. 1976, 531 F.2d 809, the Court held that the District Court not only had the power under F.R.Crim.P. 41 to approve installation of the pen register, but that it also had the authority to order the telephone company to assist in installation of the device. The Court further held that the District Court order could be interposed as a defense to

any civil damage suit which might be brought against the telephone company. In *Application of the United States,* 9 Cir. 1970, 427 F.2d 639, the Court held that under a Title III (rather than a F.R.Crim.P. 41) application for installation of a pen register, the District Court was without authority to compel the telephone company to cooperate with the Government in the interception of wire communications. Finally, in *Application of United States,* W.D.Mo.1976, 407 F.Supp. 398, the Court held that it did not have power under F.R.Crim.P. 41 to order the issuance of a pen register device. The sole source of such power is Title III of the Omnibus Crime Control and Safe Streets Act, the Court held.