**Application of the UNITED STATES for an Order Authorizing the Interception of Oral Communications, Appellant.**

**In re UNITED STATES of America, Petitioner.**

**Nos. 77–1238, 77–1284.**

United States Court of Appeals, Fourth Circuit.

Submitted July 21, 1977.

Decided Sept. 20, 1977.

Jervis S. Finney, U. S. Atty., and Daniel F. Goldstein, Asst. U. S. Atty., Baltimore, Md., for appellant.

Stephen H. Sachs, James A. Rothschild and Robert B. Levin, Baltimore, Md., for appellee.

Before WINTER and BUTZNER, Circuit Judges, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

Frustrated by their own inability to gather sufficient evidence to prosecute several individuals suspected of running a gambling operation in violation of Maryland law, local authorities requested the help of the FBI in late 1976. Until that time, the local probe had proceeded with the help of confidential informants, physical surveillance, a state court-approved wiretap and one instance of other electronic surveillance. It had reached an impasse, however, when the local agents failed in their attempts to intercept what were considered to be crucial conversations occurring within a commercial building where the principal suspects allegedly settled their accounts. The request for federal assistance was made in the hope that the FBI could succeed where the local authorities had failed. Cooperation was justified on the ground that the individuals under investigation were believed to be violating not only Md. Ann.Code art. 27, §§ 240 (illegal bookmaking) and 356 et seq. (illegal lottery), but also 18 U.S.C. §§ 1955 (illegal gambling business) and 371 (conspiracy).

Upon entering the case, the FBI concluded (1) that the interception of oral communications within the commercial building was the only available method of investigation which had a reasonable likelihood of securing the evidence necessary to prove the violations of law, and (2) that the only feasible method of interception would entail surreptitious entry of the building to install, maintain, and retrieve listening devices.[1] It was proposed that three listening devices be placed on the premises, one in a private office and two in a part of the building open to the public. The latter two would be activated only when that part of the building was closed to the public and when it was verified that one or more of the target individuals were present.

On December 20, 1976, the Government applied to the United States District Court for the District of Maryland for an order under 18 U.S.C. § 2518 which would have expressly authorized both the interceptions and one or more surreptitious entries at the commercial premises. An in camera hearing was held on the application the same day.

By memorandum and order dated December 30, 1976,[2] the district judge denied the order, although he found that the application met the formal and substantive re-

---

1. The particular reasons advanced by the Government in support of these conclusions, as well as other specific facts pertinent to the case, are included in the district court record which is presently sealed.

2. In the Matter of the Application of the United States for an Order Authorizing the Interception of Oral Communications, Misc. No. K–1051 (D.Md., Dec. 30, 1976).

quirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et. seq.* Specifically, the district court agreed that the bugging of the commercial establishment was the only avenue then open to the Government if the investigation was to proceed,[3] and that this ↝ould only be accomplished by the use of surreptitious entry. Nonetheless, the court concluded that under the Fourth Amendment standard of "reasonableness," the Government was required to establish some "paramount" or "compelling" interest to justify judicial authorization of the surreptitious entry needed to install the bug, and that such a showing had not been made in this case.

Seeking reversal of the district court's decision, the Government petitioned this court to exercise its appellate jurisdiction under 18 U.S.C. § 3731 or 28 U.S.C. § 1291 (Case No. 77–1238) or, in the alternative, to direct a writ of mandamus to the district judge (Case No. 77–1284). Today we explain more fully our memorandum and order of July 26, 1977, in which, on an expedited basis, we denied the petition for a writ of mandamus in No. 77–1284, accepted appellate jurisdiction under 28 U.S.C. § 1291 in No. 77–1238, reversed the order of the district court, and remanded the case for further proceedings.

■ The circumstances and conditions under which law enforcement authorities may legally intercept the contents of private wire and oral communications are spelled out in detail by section 802, Title III, of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. While the Act acknowledges the practical distinction between "wiretapping" and "bugging," *see* 18 U.S.C. §§ 2510(1), (2), (4), it establishes the same scheme for the judicial authorization of either type of surveillance. Thus, our summary of that scheme with respect to wiretapping in *United*

States v. Bobo, 477 F.2d 974, 980–982 (4 Cir., 1973), *cert. denied* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975), pertains similarly to the procedure which the Government and the district court were required to follow in this case.

I

Before proceeding to the substance of the Government's claims, we consider briefly the appellee's contention that we are without jurisdiction to review the lower court's denial of the application to intercept the target conversations.

First of all, we note that the Government does not advance 18 U.S.C. § 2518(10)(b) as a basis for appeal. That section gives the Government the right to appeal from an order granting a motion to suppress made under 18 U.S.C. § 2518(10)(a), or the denial of an application for an order of approval for emergency electronic surveillance made pursuant to 18 U.S.C. § 2518(7).[4] The Government points out, however, that section 2518(10)(b) is not exclusive and by its terms the appeals authorized in the two specified circumstances are "[i]n addition to any other right to appeal * * *." Accordingly, the Government contends that it has a right to appeal the district court's order under either 18 U.S.C. § 3731 or 28 U.S.C. § 1291.

■ We agree with counsel for the appellee that appellate jurisdiction of this case cannot be based upon 18 U.S.C. § 3731. That statute provides in pertinent part:

"An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property *in a criminal proceeding * * *.*" (Emphasis supplied).

In our opinion this case cannot be characterized as a criminal proceeding within the context of the statute since it has arisen

---

**3.** The court found that confidential informants were unwilling to testify; that some of the principal suspects avoided the telephone which local authorities had tapped; that a search for incriminating records would prove fruitless; that infiltration of the gambling operation

would be impossible; and that physical surveillance would be of limited value.

**4.** *See Application of United States,* 427 F.2d 639, 641 (9 Cir. 1970).

prior to any indictment or even a grand jury proceeding. It involves only an investigatory proceeding through which, at best, the Government entertains the mere expectancy of obtaining evidence of crime. The Government has cited no authority directly supporting its position, and its tangential reliance upon *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), and *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), is wide of the mark. On this jurisdictional point we are inclined to agree with Professor Moore that "[i]n view of the familiar principal of strict construction of the Government's right of appeal in criminal cases, it would appear that an order refusing to authorize interception is not appealable." 9 Moore's Federal Practice, ¶ 110.10[7] at 232 (2d Ed. 1975).

We are of the opinion, however, that we have jurisdiction of the present case under 28 U.S.C. § 1291 since the district court's order was a "final decision" within the meaning of the statute. As we have pointed out, the Government's application was not filed in a pending trial or criminal proceeding, but rather in an independent plenary proceeding pursuant to the statutory provisions of Title III, and the order of the district court denying the application was dispositive thereof and had the requisite finality to make it appealable under section 1291. *See United States v. Wallace Co.*, 336 U.S. 793, 802, 69 S.Ct. 824, 93 L.Ed. 1042 (1949), and *United States v. Calandra*, 455 F.2d 750, 752 (6 Cir. 1972).

At this juncture, decisions of the appealability of orders dealing with electronic surveillance under Title III are understandably sparse. The Ninth Circuit had occasion to consider the question in *Application of the United States*, 427 F.2d 639 (1970), and although the order in that case was somewhat ambiguous, the court of appeals concluded that since the trial court's denial of the Government's request "was truly dispositive of the Government's entire application," it was a final decision which was reviewable under section 1291. We agree with the decision in that case and accept it as supportive of our conclusion.

Counsel for the appellee suggest that the district court order is not final and appealable, contending that 18 U.S.C. § 2518(1)(e) permits the Government to make successive applications to other judges of the district court in Maryland. Section 2518(1)(e) provides in part as follows:

"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

 * * * * * *

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; * *."

The legislative history of Title III does not amplify the meaning of this statutory section, but in *United States v. Bellosi,* 163 U.S.App.D.C. 273, 276, 501 F.2d 833, 836 (1974), the court concluded that the legislative intent was "strictly to limit the employment of those techniques of acquiring information * * * to conform with the commands of the Fourth Amendment * * *." In that case the court discerned a number of objectives that could be served by section 2518(1)(e), among them being the prevention of judge-shopping; providing the judge to which application is made with detailed information appropriate to judicial consideration of whether the proposed intrusion on privacy is justified; and to reveal to the judge whether past applications have been denied in order to forestall Government harassment or other abuses of the statutory procedure. We accepted *Bel-*

*losi's* analysis of the statutory objectives in *United States v. Bernstein,* 509 F.2d 996 (4 Cir. 1975), *vacated and remanded on other grounds,* 430 U.S. 902, 97 S.Ct. 1167, 51 L.Ed.2d 578 (1977), and in our opinion Congress never intended that section 2518(1)(e) should be construed to require successive applications as a precondition to an appeal.

## II

We turn now to the appellant's contention that the district court erred in holding that the Fourth Amendment required the Government to show a "paramount interest" as a condition to judicial approval of a surreptitious entry to install a listening device.

As an initial matter, we cannot accept the suggestion that we may elide the Fourth Amendment issue on the ground that the Government had no statutory power, with or without judicial permission, to secretly go on to private property for the purpose of planting bugs. Nor, on the other hand, can the question be avoided under the theory that once the district court found the interception of the conversations to be allowable under Title III, the decision to secretly enter the premises became a subsidiary tactical matter committed solely to the judgment of the executing officers.

Admittedly, Title III is devoid of explicit language either authorizing or prohibiting surreptitious entries of private premises for the purpose of installing or implementing approved electronic surveillance. The statutory section which delineates both the contents of the application and the contours of judicial action upon it, 18 U.S.C. § 2518 (1968), as amended 1970, is silent as to whether the Government is required to inform the authorizing court that such entries are planned and whether the court has the power to condone them. The appellant argues that a surreptitious entry is contemplated by that language in the statute which authorizes the court to order a landlord, custodian, or other person to furnish eavesdroppers with "information, facilities, and technical assistance to accomplish the interception *unobtrusively* * * *," 18 U.S.C. § 2518(4) (Emphasis supplied). The contention that this language, at least inferentially, supports the Government's position that Congress intended to approve covert entry as a permissible concomitant of judicially-sanctioned eavesdropping was recognized in *United States v. Ford,* 414 F.Supp. 879, 883 (D.D.C.1976), aff'd 553 F.2d 146 (D.C.Cir.1977). *See also United States v. Altese,* No. 75–CR–341, 50 (E.D. N.Y., filed October 14, 1976).

We find it unnecessary to rely solely on such tenuous inferences from the statutory language to conclude that covert entry by federal officials is congressionally authorized for, in our opinion, any other conclusion would run counter to the principle that we should attempt to effectuate the purpose of federal legislation and avoid interpretations which produce absurd or nugatory results. *Cf. Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Crosse & Blackwell Co. v. FTC,* 262 F.2d 600, 605, 606 (4 Cir. 1959). The purpose of Congress in enacting Title III was twofold: first, to safeguard the privacy of wire and oral communications by prohibiting their unauthorized interception, and, second, to combat certain enumerated crimes by allowing law enforcement personnel to conduct constitutionally inoffensive, yet effective, electronic surveillance. That the second of these goals was of paramount concern is indicated by the congressional finding that

> "Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice." 82 Stat. 211, Section 801(c) 1968.

Moreover, the documented history of Title III is replete with references to the evils of organized crime and the pressing need to apprehend its perpetrators through the interception of their communications. S.Rep.No. 1097, *supra, reprinted* at 1968 U.S.Code Cong. & Admin.News, p. 2112, *et*

*seq.* Indeed, at one point the Senate Committee on the Judiciary stated that "[t]he major purpose of Title III is to combat organized crime." *Id.* at 70; 2157.

We cannot accept the suggestion that Congress, so clearly desirous of arming federal investigators with the power to eavesdrop, intended, without saying so, to forbid the surreptitious placement of devices which might be vital to the effective exercise of that power. Were this true, criminals might avoid apprehension by conducting their conversations upon premises, such as those in the case at hand, which are insusceptible of eavesdropping by non-trespassory means. We discern no congressional intent to open such a loophole in Title III, especially in light of Congress' awareness of prior opinions of the Supreme Court which suggested not only the usefulness of surreptitious trespasses in this type of investigation, but also the Constitutional permissibility of the secret, trespassory placement of listening devices under proper circumstances.[5]

 In our opinion, the fact that Title III does not expressly limit the manner of installing listening devices is, in light of the announced legislative intent, consistent with the conclusion that Congress implicitly commended the question of surreptitious entry to the informed discretion of the district judge, subject to the commands of the Constitution. Thus, where the Government makes the showing required by section 2518, entitling it to an order authorizing the interception of oral communications, surreptitious entry for the purpose of imple-

menting the interception is a statutorily viable technique. *See United States v. Agrusa,* 541 F.2d 690 (8 Cir. 1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977); *United States v. Volpe,* 430 F.Supp. 931 (D.Conn.1977); *United States v. Dalia,* 426 F.Supp. 862 (D.N.J. 1977); *United States v. Altese, supra; United States v. London,* 424 F.Supp. 556 (D.Md.1976), *aff'd. on other grounds,* 556 F.2d 709, *sub nom United States v. Clerkley* (4 Cir. 1977).

We do not mean to imply, however, that merely because Congress contemplated the use of surreptitious entries, a Title III order authorizing the interception of conversations gives eavesdroppers *carte blanche* to take any steps whatsoever to effect their plan. Secretive physical trespass upon private premises for the purpose of planting a bug entails an invasion of privacy of constitutional significance distinct from, though collateral to, that which attends the act of overhearing private conversations.[6] While we have held that judicially-granted permission to invade an individual's expectation of conversational privacy, pursuant to Title III's guidelines, is constitutional, *United States v. Bobo,* 477 F.2d 974 (4 Cir. 1973), *cert. denied* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975), such permission does not suspend the operation of the Fourth Amendment for other purposes. It cannot, in itself, excuse even less grievous governmental incursions into other aspects of private life. As the Supreme Court observed in *Chimel v. California,* 395 U.S. 752, 767, fn. 12, 89 S.Ct. 2034, 2042, 23 L.Ed.2d 685 (1969):

---

**5.** *See* S.Rep., *supra,* 66–75, 1968 U.S.Code Cong. & Admin.News, pp. 2153–2163, surveying all pre-Title III Supreme Court eavesdropping decisions, with special emphasis upon *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). While the decision in *Berger* went off on other points, the opinion clearly reveals that the interception under scrutiny was accomplished by means of a bugging device surreptitiously planted in the target office. 388 U.S. 45, 81, 96, 102, 110, 111, 87 S.Ct. 1873. The Court, however, did not order the suppression of the collected evidence on that basis.

**6.** The distinction is obvious. Non-trespassory eavesdropping penetrates only that expectation of privacy which an individual reasonably possesses with respect to his spoken words. *Cf. Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). But when agents of the Government physically enter business premises, as to which an individual has a legitimate expectation of privacy, *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 352–354, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), more than just his conversation is subjected to the Government's scrutiny. Intruding officers are capable of seeing and touching items which would not be disclosed by the non-trespassory surveillance.

**644**

"* * * we can see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require."

██ Permission to surreptitiously enter private premises cannot, therefore, be implied from a valid Title III order sanctioning only the interception of oral communications. *See United States v. Ford, supra; United States v. Agrusa, supra* at 696.[7] With respect to the instant case, this means that even had the district court issued an order of authorization on the basis of its preliminary conclusion that the statute permitted interception of the target conversations, the door would not have been automatically opened for the Government to plant listening devices in the manner proposed.

██ The district court was thus correct insofar as it subjected the request for authorization of surreptitious entry to separate Fourth Amendment consideration. Since in the absence of exigent circumstances the Fourth Amendment commands compliance with the warrant requirement, we would normally countenance secret entry by federal agents for the purpose of installing, maintaining, or removing listening devices only under the following conditions: (1) where, as here, the district judge to whom the interception application is made is apprised of the planned entry; (2) the judge finds, as he did here, that the use of the device and the surreptitious entry incident to its installation and use provide the only effective means available to the Government to conduct its investigation; and (3) only where the judge specifically sanctions such an entry in a manner that does not offend the substantive commands of the Fourth Amendment. Such a requirement is not novel to the law of search and seizure. It also comports with the interception scheme of Title III, since it is apparent that the legislature anticipated meticulous judicial supervision of all aspects of electronic eavesdropping.

### III

██ While the district judge correctly bifurcated his consideration of the applications for permission to eavesdrop and to enter, we are of the opinion that he erroneously denied the requested order on the basis that the Fourth Amendment required the Government to show, in addition to "the obviously important interest" it had already established, a "paramount" or "compelling" justification for the secret entry. The difficulty this standard presents is not only that it is foreign to settled Fourth Amendment doctrine, but also that it, in effect, operates to usurp the legislative function. As we have had occasion to observe in another eavesdropping context,

"Men may differ, and many courts have differed, as to what is a reasonable search and seizure, but it is beyond question that the Fourth Amendment only prohibits *unreasonable* searches and seizures." *United States v. Bobo*, 477 F.2d 974, 978 (1973) (Emphasis supplied).

While the precise contours of the test of reasonableness vary from case to case, it is clear that the test is designed

"* * * to guarantee that a decision to search private property is justified by a reasonable governmental interest. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Camara v. Municipal Court*, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967).

Significantly, the test "is not inflexible or obtusely unyielding to the legitimate needs of law enforcement * * *;" and there is room in the Fourth Amendment to accommodate both the legitimate goals of law

---

**7.** *But see United States v. Dalia, supra; United States v. Altese, supra*, and *United States v. London, supra*, taking the position that authorization of covert entry to install bugging equipment is implicit in an order sanctioning only interception.

enforcement and the individual's right of privacy in the area of electronic surveillance. *United States v. Bobo, supra,* 477 F.2d at 979.

The test advanced by the lower court would permit the judiciary to substitute its judgment for that of the legislature as to the nature and significance of the public interest which justifies electronic surveillance. In Title III Congress specified the criminal laws which federal authorities are authorized to investigate by the interception of communications. 18 U.S.C. § 2516(1), as amended 1971. The statute contains no indication that the enforcement of any one of these specified laws is more or less in the public interest than the similar enforcement of the others. Yet, the "paramount interest" standard adopted by the district court would ignore the statutory equation of the importance of eavesdropping to the enforcement of the enumerated laws. Under such a rationale, an investigation of a violation of the gambling laws, although authorized by section 2516, would apparently never satisfy the paramountcy requirement if conducted by means of eavesdropping devices secretly planted—even when the apprehension of an offender, as here, could not be accomplished by other means. On the other hand, the use of secretly planted devices to prevent the imminent bombing of an office building, likewise authorized by section 2516, would evidently square with this application of the Fourth Amendment to the statutory procedure.

■ We cannot approve a standard which differentiates between the interests which Congress has placed on an equal basis, for the courts are not free to pick and choose in this fashion between congressional responses to national problems. *Cf. Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). The decision in *Berger, supra,* and the findings embodied in section 801 of Title III demonstrate that Congress had the power to authorize surveillance to combat the specified crimes and that it ex-

ercised that power reasonably. This being established, we would usurp the legislative function if we were to question, as the paramountcy standard apparently does, the wisdom or appropriateness of the congressional decision to place equal emphasis upon the electronic investigation of all the section 2516 crimes.

■ We decline, therefore, to deviate from the settled Fourth Amendment test of reasonableness. Applying that test, we conclude that the district court should have granted the Government's request for an order sanctioning both the interception of the oral communications and the surreptitious entry into the commercial building for the purpose of installing, maintaining, and removing the bugs. The reasonableness of the proposed interception is implicit in the observation of the court below that "[i]f the Government had * * * sought only authorization to install a telephone wiretap, this Court would have granted the same." Title III makes no distinction between the requisites of valid wiretapping and bugging applications, and, when authorized pursuant to Title III, neither type of surveillance violates the Fourth Amendment. *United States v. Bobo, supra.*

With respect to the proposed entry, we are convinced that the manner in which the Government proposes to plant the devices reasonably accommodates both the public interest in criminal investigation and the interests of those individuals who might entertain justifiable expectations that their premises will not be physically invaded by outsiders. The public interest is demonstrated by the finding of the district court that the investigation could proceed only by the surreptitious installation of the device. The willingness of the Government to abide by detailed guidelines as to the time and manner of entry, its assurance that entry will be made only at a time when the premises are unoccupied, and its acknowledgment that the scope of any such entry should not exceed its limited purpose, im-

presses us as evincing a proper respect for those aspects of privacy which are unrelated to the precise purpose of the statutory mission.

IV

We confirm our order of July 26, 1977, in the following respects:

The petition for a writ of mandamus (No. 77–1284) is denied. The order of the district court in No. 77–1238 is reversed and the case is remanded to the district court for further proceedings. On remand, the district court shall, upon a showing by the government that the factual basis for its request for its order to install three devices for the interception of oral communications at the locality and upon the terms and conditions set forth in its application, including the right to make surreptitious entry to install, maintain and remove the same, is now substantially the same as that demonstrated at the time of the application, issue the requested order.

*REVERSED* and *REMANDED*.