**UNITED STATES of America**

v.

**Bernard S. ROWLAND and Hollen Scott Crawford.**

**Crim. No. CR 4–77–78.**

United States District Court,
N. D. Texas,
Fort Worth Division.

Dec. 12, 1977.

Jimmy Tallant, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff.

Jerry Loftin, John A. Brady, Ronald W. Quillin, Fort Worth, Tex., for defendant.

## MEMORANDUM AND ORDER

MAHON, District Judge.

There is now before the Court Defendants' Motion to Suppress based on an alleged violation of their Fourth Amendment rights. Because of the particular facts in this case, the Court is of the opinion that Defendants' motion is meritorious and must be granted. The Court wishes to stress, however, that this decision is limited to the facts of this case.

## · FACTS

In March 1977, United States Customs Agent, Glenn W. King submitted a sworn affidavit to William M. Mallet, Federal Magistrate for the Southern District of Texas. In the affidavit King stated that there was probable cause to believe that an aircraft bearing FAA registration No. N1450M, a 1969 model single engine Cessna 206, serial number U20601450 had been and was being used to transport marijuana from Mexico in violation of 18 U.S.C. § 545; 19 U.S.C. §§ 1454, 1460; and 21 U.S.C. §§ 841(a)(1), 846, 952(a) and 962. Permission was sought to enter the plane in order to install an electronic tracking device. On March 17, 1977, the Magistrate issued the search warrant. The warrant ordered the plane to be searched at any time day or night within the next ten days, "and if the property be found there to seize it." The warrant, which stated only that the plane was in the Southern District of Texas, made no mention of the electronic beeper.

The transponder was installed in defendant Rowland's Cessna 206 at 2:00 a. m. on March 24, 1977 by U.S. Customs Agents Louis Picciano and Bryan Quick. At that time the plane was located, along with five or six other planes also owned by Rowland, in a hangar on his private eighty acre airfield near La Sora, Texas. Picciano testified that he and Quick entered on Rowland's land and walked approximately fifty feet to get to the hangar. The 140 by 100 feet hangar had four sliding steel doors that were closed and locked on the night in question. The agents thereupon picked the lock, entered the hangar and installed the beeper on the Cessna 206. As a result of the agents being able to track his airplane, Rowland was arrested on April 11, 1977 while bringing approximately 1100 pounds of marijuana in from Mexico.

Defendants' motion is based primarily on four arguments: (1) The tracking of the plane with the transponder was a continual search and, therefore, the tracking and arrest of Rowland 25 days after the warrant was issued violated the ten day limitation in the search warrant; (2) the warrant was invalid in that no probable cause existed for a nighttime entry of the plane; (3) the search warrant authorized a search of the plane, not the planting of a transponder; and (4) the Defendants' Fourth Amendment rights were violated in that there was no judicial authorization for the breaking and entering of the hangar. This Court sees no real validity to the first three arguments. (1) The warrant was executed by the physical invasion of the plane which took place within the ten day limitation. A new warrant is not required for every ten days the plane is actually being tracked. (2) The magistrate determined that there was sufficient justification for a possible nighttime search. This is within his discretion. (3) The affidavit and the warrant's return both clearly showed that the aircraft was entered solely to place the transponder. Since the magistrate was apprised of this, its omission from the warrant does not invalidate the warrant. Clearly the better practice, however, would be to include that information in the actual search warrant. The last issue is one that involves an extremely difficult area of law that has just this year created a split between the circuits.

**24**

## DISCUSSION

The question that is at the center of the controversy may be stated as follows: Does a valid search warrant which allows the placing of an electronic listening or tracking device impliedly permit the covert breaking and entering of the premises in order to place the bug? A "no" answer is supported by *U. S. v. Finazzo,* 429 F.Supp. 803 (E.D.Mich.1977); *In re Application of U. S.,* 563 F.2d 637 (4th Cir. 1977); and *U. S. v. Ford,* 553 F.2d 146 (D.C.Cir. 1977). A "yes" answer is supported by *U. S. v. Dalia,* 426 F.Supp. 862 (D.N.J.1977); and *U. S. v. Scafidi,* 564 F.2d 633 (2nd Cir. 1977). The Fifth Circuit has not yet been confronted with this question.

■ All of the above cases involved installing listening devices in business premises. Apparently, in all but the *Dalia* case, it would have been at least theoretically possible to install the bugs without a covert break-in by having agents pose as customers during business hours. Our facts differ in that the public had no access to Rowland's airplane. Had the plane been out in the open at either a public or private airport, the Court would have no problem with this case. But by placing his plane inside a locked hangar, Defendant clearly had some reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Unlike a business premises, an airplane is not always located in the same place.[1] The transponder obviously could not be planted while the plane was in the air. But when this plane was not flying it was almost always at Rowland's airfield in La Sora, Texas. King, the customs agent who applied for the search warrant, testified that he first learned about Rowland on March 8, 1977 from his Supervisor in San Antonio. Before writing the affidavit in support of the search warrant in question, King was told who the owner of the plane was, that it was normally located at an airstrip in La Sora, Texas and that there were hangars at

that strip. The only information King said he did not have was whether Rowland owned the airstrip and the hangar. But the address of of the owner of a plane was readily available through the FAA registration number. In any event, Agent Picciano stated that it was common knowledge among the men working on this case that Rowland owned the plane, the hangar and the airstrip. In spite of this the only reference in the search warrant to the plane's location was that it was in the Southern District of Texas. The affidavit made no reference to the hangar, no reference to the likelihood that the plane would be in that hangar, and no reference to the possible need to surreptitiously break into the hangar, all of which were known by the agents prior to obtaining the search warrant.

## CONCLUSION

Under the facts of this case, the Court feels that judicial authorization was necessary before the agents could legally break into the locked hangar. There is no reason the affidavit could not have informed the magistrate that an entry into the hangar might be necessary. Permission to break into the hanger could easily have been given in the same warrant ordering the search of the airplane. This Court is unwilling to say that the warrant, which said only that the plane was located in the Southern District of Texas, impliedly gave the agents the right to break into the hangar in order to plant the transponder on the airplane. As the Fourth Circuit said in *In re Application of U. S.,* 563 F.2d 637 (4th Cir. 1977):

> . . . [W]e would normally countenance secret entry by federal agents for the purpose of installing, maintaining or removing listening devices *only* under the following conditions: (1) where, as here, the district judge to whom the interception application is made is apprised of the planned entry . . .

(emphasis added) *Id.* at 644.

Not informing the magistrate of the need to break into the hangar is not merely a technical or clerical slip-up. Important

---

1. In many respects an airplane is very much like an automobile which can be searched without a warrant. Since there was a warrant in this case, the difficult question of whether one was necessary is irrelevant. *See United States v. Holmes,* 521 F.2d 859 (5th Cir. 1975).

Fourth Amendment rights are at stake. The Court cannot agree with the Second Circuit that the decision as to whether a covert break-in is necessary should be left to law enforcement agencies rather than judges. *United States v. Scafidi, supra.* This is especially the case where, as here, the Agency with knowledge of the above facts, had gone before the Magistrate and could easily have obtained a warrant covering the contingency that a breakin might be needed. As the Supreme Court said in *United States v. United States District Court,* 407 U.S. 297, 318 [92 S.Ct. 2125, 2137, 32 L.Ed.2d 752] (1972), "Prior review by a neutral and detached magistrate is the time-tested means of effectuating Fourth Amendment rights."

Because of the importance of judicial authorization prior to searches and seizures and because of the ease with which the magistrate could have been apprized of the need for a break-in, the Court has no choice but to grant Defendants' motion. It is, therefore, ORDERED that Defendants' Motion to Suppress be, and hereby is, granted.