UNITED STATES of America,
Plaintiff-Appellee,

v.

JS & A GROUP, INC. and Joseph
Sugarman, Defendants-Appellants.

No. 82–2601.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1983.

Decided Aug. 30, 1983.

Victor E. Grimm, Bell, Boyd & Lloyd,
Chicago, Ill., for defendants-appellants.

David M. Fitzgerald, Federal Trade Commission, Washington, D.C., for plaintiff-appellee.

Before BAUER, NICHOLS,* and WOOD, Circuit Judges.

NICHOLS, Circuit Judge.

This action was brought by the United States Department of Justice on behalf of the Federal Trade Commission (FTC or Commission) seeking civil penalties and injunctive relief for alleged violations of the Commission's trade regulation rule concerning mail order merchandise (Mail Order Rule). 16 C.F.R. § 435. Here the alleged violations were failure to deliver merchandise paid for in advance or to pay refunds for merchandise not in inventory. The case is before us on interlocutory appeal from a district court order denying appellants' motion to dismiss. *United States v. JS & A Group, Inc.,* 547 F.Supp. 20 (N.D.Ill.1982).

The district judge certified the case under 28 U.S.C. § 1292(b) for us to consider it before he proceeded to adjudicate the merits. The questions thus certified are novel and important. The appellants raise questions that are by no means frivolous, though we differ with the district judge about ambiguity of the statute. We have granted leave to appeal. We are asked to determine whether the Commission may seek civil penalties pursuant to section 5(m)(1)(A) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(m)(1)(A) (1976) for alleged violations of its Mail Order Rule. We are also asked to determine whether the Commission may seek permanent injunctive relief pursuant to section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (1976) against future violations of this Rule by appellants. For reasons set forth below, we conclude that the Commission may seek both civil penalties and permanent injunctive relief in this case. The order of the district court denying dismissal of the Commission's complaint is therefore affirmed.

I

The Federal Trade Commission Act of 1914, 38 Stat. 717 et seq. (1914), created an administrative body "to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed, and to perform other specified duties as a legislative or as a judicial aid." *Humphrey's Executor v. United States,* 295 U.S. 602, 628, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935). Pursuant to section 5 of this Act, 38 Stat. 719, *as amended,* 15 U.S.C. § 45(a) (1976), Congress has empowered and directed the Commission to prevent persons, partnerships, and corporations from engaging in any unfair method of competition or unfair or deceptive act or practice in or affecting commerce. During the first 50 years of its existence, the Commission carried out this function by means of an administrative adjudicatory proceeding consisting of a complaint, a hearing, and, if a violation was found, findings of fact and issuance of a cease and desist order prohibiting future violations. The cease and desist order was reviewable upon petition to the appropriate court of appeals of the United States, and violation of a final order subjected the offender to a civil penalty. *See* 15 U.S.C. § 45(b)–(m).

In the early 1960's, the Commission for the first time sought to enhance its effectiveness to prevent unfair methods of competition and other improper acts by promulgating substantive trade regulation rules. *See* 27 Fed.Reg. 4636 (1962). These rules, which defined specific practices the Commission considered to be illegal under the FTC Act before any adjudication, provided the standard upon which future cease and desist actions, in the manner described above, would be brought by the Commission. By combining substantive rulemaking with the adjudicative proceeding, the Commission had only to prove violation of an applicable trade regulation rule at the hearing; the more burdensome, inefficient, and sometime arbitrary case-by-case adjudication against each industry participant, in which the Commission had to prove that a specific practice was unfair or deceptive,

---

* The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

was thereby curtailed. Moreover, substantive rulemaking provided the business community with greater certainty as to what practices the Commission deemed unacceptable, prior to adjudicatory action, and provided a means by which an industry participant could know when he should voluntarily abandon an act or practice. These trade regulation rules were promulgated in accordance with the notice and comment procedures under the Administrative Procedures Act, 5 U.S.C. § 553, and any rule could be set aside upon judicial review if found to be arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

The Commission found its authority to engage in substantive rulemaking in section 6(g) of the FTC Act, 15 U.S.C. § 46(g), which then provided that the Commission was empowered to "make rules and regulations for the purpose of carrying out the provisions of section 41 to 46 and 47 to 58 of this title." The authority of the Commission to promulgate trade regulation rules under section 6(g) was upheld in *National Petroleum Refiners Association v. F.T.C.,* 482 F.2d 672 (D.C.Cir.1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974) (*Octane Rating* case).

Shortly after the *Octane Rating* case, Congress explicitly granted authority to the Commission to promulgate substantive trade regulation rules in section 202(a) of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act of 1975 (Magnuson-Moss Act), Pub.L. No. 93–637, 88 Stat. 2183, 2193 (codified *as amended* at 15 U.S.C. § 57a (Supp. V 1981). The amendment read:

The Federal Trade Commission Act (15 U.S.C. 41 et seq.) is amended by redesignating section 18 as section 21, and inserting after section 17 the following new section:

Sec. 18(a)(1) The Commission may prescribe—

(A) interpretive rules and general statements of policy with respect to unfair or deceptive acts or practices in or affecting commerce (within the meaning of section 5(a)(1) of this Act), and

(B) rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce (within the meaning of such section 5(a)(1)). Rules under this subparagraph may include requirements prescribed for the purpose of preventing such acts or practices.

The Magnuson-Moss Act also established procedures the Commission was to follow in issuing such rules, enhanced the "process" due to the affected industry members beyond that of the Administrative Procedures Act, provided for judicial review of the legality of a rule, and authorized the Commission to seek civil penalties for alleged violations of such rules. 88 Stat. 2193–95, 2200–01 (codified *as amended* at 15 U.S.C. § 57a and 15 U.S.C. § 45(m)). Furthermore, section 202(c)(1) of the Magnuson-Moss Act provided:

The amendments made by subsections (a) and (b) of this section shall not affect the validity of any rule which was promulgated under section 6(g) of the Federal Trade Commission Act prior to the date of enactment of this section. Any proposed rule under section 6(g) of such Act with respect to which presentation of data, views, and arguments was substantially completed before such date may be promulgated in the same manner and with the same validity as such rule could have been promulgated had this section not been enacted.

[88 Stat. 2198.]

It is uncontested that the Mail Order Rule, finally adopted in 1975 after the Magnuson-Moss Act, 40 Fed.Reg. 49492 (1975), was one of several FTC trade regulation rules "saved" by the above provision. Presentation of data, views, and arguments had been substantially completed. Procedures had been those of the Administrative Procedures Act without the new improvements. What is disputed in this case is the extent to which the Mail Order Rule was "saved," and the means by which the Com-

mission may enforce this rule. It is to these questions we now turn.

## II

### A

■ Appellants first argue that the Commission lacked authority under section 6(g) of the FTC Act to promulgate the Mail Order Rule, urging it would be of no validity had the Magnuson-Moss Act not become law. Appellants' argument is based on selections from legislative history, general notions of statutory interpretation, the enforcement practices of the Commission during its first 50 years, and an assertion of implied congressional ratification thereof. It necessarily challenges the correctness of the *Octane Rating* decision and says that the "rules and regulations" of previous section 6(g) related to procedures and enforcement only. As we discern no argument raised by appellants as to this issue that was not thoroughly and correctly considered in the *Octane Rating* case, we decline the opportunity to reiterate each of appellants' specific arguments, and incorporate by reference that case's lengthy discussion of the Commission's rulemaking authority under section 6(g). Suffice to say that we agree with the conclusion reached by that court, for the reasons stated therein, and do not find appellants' contention that the *Octane Rating* case was erroneous to be persuasive.

Furthermore, our review of the legislative history of the Magnuson-Moss Act persuades us that Congress also considered the controversy surrounding the Commission's substantive rulemaking power under section 6(g) to have been settled by the *Octane Rating* case, which reports of committees and debates frequently mentioned. *See e.g.,* S.Rep. 93–151, 93rd Cong., 1st Sess. 32, 57; H.R.Rep. 93–1107, 93rd Cong., 2d Sess. 33, U.S.Code Cong. & Admin.News 1974, p. 7702, 120 Cong.Rec. 31316, 41407 (1974); 119 Cong.Rec. 29480 (1973). In enacting section 202, Congress intended to preserve the Commission's existing substantive rulemaking authority while providing additional procedural safeguards for such rulemaking for the future only. *See e.g.,* H.R.Rep.

93–1606, 93rd Cong., 2d Sess. 31–32; H.R. Rep. 93–1107, *supra* at 45–46, U.S.Code Cong. & Admin.News 1974, p. 7702; 120 Cong.Rec. 31738, 41406. Despite appellants' contentions, we do not interpret section 202 as leaving open the issue of section 6(g) rulemaking power, still less as "relegating *Octane Rating* to limbo," nor are we persuaded that Congress intended this issue to be litigated each time the Commission seeks to enforce a trade regulation rule before the enactment of the Magnuson-Moss Act. We therefore reject appellants' argument that the Commission lacked the statutory authority to promulgate the Mail Order Rule under section 6(g). Even in the absence of this history, we would not perceive sufficient justification for the momentous step of going into conflict with the D.C. Circuit at its most persuasive.

### B

■ We now deal with issues that do not require reexamination of the *Octane Rating* case. Appellants next contend that even if the Mail Order Rule is valid in this case, the Commission cannot seek civil penalties under section 205(m)(1)(A) of the Manguson-Moss Act, 15 U.S.C. § 45(m)(1)(A). Under appellants' interpretation, this section limits the Commission to seeking civil penalties only for violations of a regulation promulgated under the new procedures of the Magnuson-Moss Act. As the Mail Order Rule was promulgated under section 6(g), appellants contend that the Commission can seek only a cease and desist order in this case. The government, however, argues that the civil penalty provision is clear on its face and explicitly allows the Commission to seek civil penalties for violations of *any rule* under this Act, irrespective of when the rule was promulgated. We agree with the government.

Section 205(a) provides:

Section 5 of the Federal Trade Commission Act (15 U.S.C. 45(a)) is amended by inserting after subsection (*l*) the following new subsection:

"(m)(1)(A) The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates *any rule under this Act* respecting unfair or deceptive acts or practices (other than an interpretative rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,-000 for each violation. [Emphasis supplied.]

In analyzing the words "this Act," the district court opined that these words could refer to either the Federal Trade Commission Act as a whole or only the Magnuson-Moss Act. It could, by its mere text, without context, mean the 1975 amending legislation, the entire Act but only as amended, or also the Act as it was before the amendment, whereby it would include a rule made under the prior law. These words are not to be read in isolation, however, but are to be interpreted in light of the entire statutory scheme. We believe section 205 clearly and unambiguously states Congress' intent to allow civil penalties for violations of any rule relating to unfair or deceptive practices under the FTC Act, regardless of the date such rule was promulgated, if the rule itself is valid. *See United States v. Union Circulation Co.,* 1982-3 Trade Cas. (CCH) ¶ 65,052 at 70,862 (N.D.Ga.1982); *United States v. Hertz Corp.,* 1981-2 Trade Cas. (CCH) ¶ 64,023 at 76,292 (S.D.Fla.1981).

As noted previously, the "savings clause" in section 202(c)(1) of the Magnuson-Moss Act explicitly preserved the validity of those rules, including the Mail Order Rule, which had undergone substantial promulgation before enactment of the Magnuson-Moss Act. Congress necessarily understood, in confirming the validity of section 6(g) rules, that the Commission would continue to enforce rules promulgated under that

section. In the same Act, Congress explicitly provided that the Commission may seek civil penalties for *any* rule, other than an interpretative rule or a rule of the Commission which does not constitute a statutory violation.

If rules made under former law must be done all over again under the new more onerous procedure, why bother with the savings clause? The government argues, and we agree, that the district judge conceded too much in conceding that section 205(a) was ambiguous. As no distinction as to the method of enforcement of such rules was made by Congress, and we find no indication in either the statutory language or the legislative history that any such distinction was intended, we will not imply one here from the mere word "Act."

■ Next, appellants contend that the civil penalty provision cannot be applied retroactively to pre-Magnuson-Moss Act rules. This argument, however, is misplaced. Congress specifically guarded against retroactive application of the civil penalty provision by providing that the provision "shall not apply to any violation, act, or practice to the extent that such violation, act, or practice occurred before the date of enactment of this Act." 88 Stat. 2201. The allegedly illegal practices engaged in by appellants occurred from February 1976 to December 1978 which, of course, was after the enactment date of the Magnuson-Moss Act. Thus, the Commission is not seeking to apply the civil penalty provision in the retroactive manner forbidden by the statute. Furthermore, in light of the savings clause, we do not believe that the fact that the Mail Order Rule was made under pre-Magnuson-Moss Act procedures necessitates a different analysis.

C

■ Finally, we examine the authority of the government to seek a permanent injunction in this case. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (1976) provides:

Whenever the Commission has reason to believe—

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any such suit shall be brought in the district in which such person, partnership, or corporation resides or transacts business.

Appellants contend that section 13(b) authorizes the Commission to seek injunctive relief only when an administrative adjudicative proceeding is pending before the Commission. As appellants read the statute, a court would be required to dissolve a preliminary injunction when an order of the Commission has become final, and only then, at the conclusion of the case, may a court issue a permanent injunction. As no complaint is pending or contemplated here, appellants conclude the Commission lacks authority to seek a permanent injunction in this case. The government obviously disagrees. It contends that permanent injunctive relief may be sought by the Commission, and granted by a district court, irrespective of the pendency of an administrative proceeding. Again, we agree with the government's interpretation.

The statutory language of section 13(b) limits the availability of preliminary injunctive relief to situations "pending issuance of a complaint by the Commission." No similar language is found in the second proviso relating to permanent injunctive relief. Preliminary relief and a permanent injunction are entirely different animals, and here Congress clearly intended that each be governed by a separate statutory provision. Had Congress intended the initiation or not of an administrative cease and desist proceeding to affect the ability of the Commission to seek permanent injunctive relief, it undoubtedly would have included language similar to that found in the provision governing preliminary injunctive relief.

Furthermore, this interpretation is supported by the legislative history. Section 13(b) was originally introduced as section 210 of the Senate bill (S. 356) that led to the Magnuson-Moss Act, although it was enacted as part of the Trans-Alaska Pipeline Act, Pub.L. No. 93–153, 87 Stat. 592 (1973). The Senate Report on that bill explains the intent of this provision. It states:

This section would permit the Commission to obtain either a preliminary or permanent injunction through court procedures initiated by its own attorneys against any act or practice which is unfair or deceptive to a consumer, and thus prohibited by section 5 of the Federal Trade Commission Act. The purpose of section 210 is to permit the Commission to bring an immediate halt to unfair or deceptive acts or practices when to do so would be in the public interest. At the present time such practices might continue for several years until agency action is completed. Victimization of American consumers should not be so shielded.

Section 210 authorizes the granting of a temporary restraining order or a preliminary injunction without bond pending

the issuance of a complaint by the Commission under section 5, and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final within the meaning of section 5. The test the Commission would have to meet in order to secure this injunctive relief is similar to the test it must already meet when attempting to secure an injunction against false advertising of food, drugs, devices, or cosmetics. (See 15 USC 53(a).)

Provision is also made in section 210 for the Commission to seek and, after a hearing, for a court to grant a permanent injunction. This will allow the Commission to seek a permanent injunction when a court is reluctant to grant a temporary injunction because it cannot be assured of a [sic] early hearing on the merits. Since a permanent injunction could only be granted after such a hearing, this will assure the court of the ability to set a definite hearing date. Furthermore, the Commission will have the ability, in the routine fraud case, to merely seek a permanent injunction in those situations in which it does not desire to further expand upon the prohibitions of the Federal Trade Commission Act through the issuance of a cease-and-desist order. Commission resources will be better utilized, and cases can be disposed of more efficiently.

[S.Rep. 93–151, 93rd Cong., 1st Sess. 30–31 (1973).]

Our view is in complete accord with prior judicial interpretation of this provision. *See FTC v. Singer, Inc.,* 668 F.2d 1107, 1110–11 (9th Cir.1982); *United States v. National Dynamics Corp.,* 525 F.Supp. 380, 381 (S.D.N.Y.1981). *See also FTC v. Virginia Homes Manufacturing Corp.,* 509 F.Supp. 51 (D.Md.1981), *aff'd,* 661 F.2d 920 (4th Cir.1981). As appellants have provided no persuasive argument why the legislative history or natural reading of the provision should be disregarded, we hold that section 13(b) of the FTC Act authorizes the Commission to seek, in a proper case, and the court to grant, after proper proof, permanent injunctive relief, irrespective of whether a Commission proceeding regarding the alleged violations is pending or contemplated.

AFFIRMED.