**UNITED STATES of America**

v.

**Robert SCHILLING, John Schilling, R & J Enterprises, Inc. d/b/a Schilling Brothers Gas Stop.**

**Civ. No. H 87–229.**

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 8, 1988.

F. Henry Habicht, II, Asst. Atty. Gen., Land & Natural Resources Div., U.S. Dept.

of Justice, Robert Oakley, Environmental Enforcement Section, U.S. Dept. of Justice, Phyllis R. Anderson, Field Operations & Support Div., U.S. E.P.A., Washington, D.C., Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., for plaintiff.

Richard S. Tebik, Skozen & Tebik, Munster, Ind., for defendants.

## ORDER

MOODY, District Judge.

This matter is before the court on plaintiff's motion for summary judgment, filed pursuant to Fed.R.Civ.P. 56 on March 10, 1988. Defendants John Schilling, Robert Schilling, and R & J Enterprises, Inc. responded on March 28, 1988, and plaintiff filed its reply on April 6, 1988.

## I.

This is a civil action brought by the United States against R & J Enterprises, Inc., and its officers Robert and John Schilling, for alleged violations of the Clean Air Act, 42 U.S.C. § 7545, and the regulations promulgated thereunder at 40 C.F.R. Part 80.

Following the August 2, 1988 consensual inspection of Schilling Brothers Gas Stop, a gasoline retail outlet located at 9125 Wicker Avenue, St. John, Indiana, the government cited defendant owners of that gasoline outlet with the following violations: (1) failing to label four gasoline pumps "unleaded gasoline"; and two pumps "contains lead anti-knock compounds" (six label violations); (2) failing to post signs stating "Federal law prohibits the introduction of any gasoline containing lead or phosphorus into any motor vehicle labeled 'UNLEADED GASOLINE ONLY'" in each pump stand area, of which there are four at the outlet (four sign violations); and (3) allowing leaded gasoline to be introduced into two vehicles that were labeled as requiring unleaded gasoline (two introduction violations). Defendants face fines of $10,000 for each of the twelve violations.

In the instant motion, plaintiff asks for summary judgment on all three allegations, while defendants deny liability on all three.

## II.

An initial procedural matter deserves mention. Fed.R.Civ.P. 56, which governs motions for summary judgments, provides that such motions may be made "with or without supporting affidavits," Fed.R.Civ.P. 56(a). When responding to a motion for summary judgment, however,

> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Rule 56 is supplemented by Rule 11 of the General Rules of the United States District Court for the Northern District of Indiana ("Local Rule 11"), which provides in pertinent part:

> In addition to a separate supporting brief ...there shall be served and filed with each motion for summary judgment ...a statement of material facts as to which the moving party contends there is no genuine issue.... Any party opposing the motion shall ...serve and file.... A concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

> In determining the motion for summary judgment, *the court will assume that the facts as claimed by the moving party are admitted to exist without controversy, except as and to the extent that such facts are actually in good faith controverted in the "statement of genuine issues" filed in opposition to the motion,* as supported by the depositions, answers to interrogatories, admissions, and affidavits on file.

[emphasis added].

There are sound reasons for this rule. Requiring the moving party to provide a statement of material facts claimed to be undisputed sharpens the issues so that the

nonmoving party may frame its response. Requiring the nonmoving party to controvert these facts in a "statement of genuine issues" provides a concrete procedure by which the nonmoving party may meet its burden to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This procedure aids the court in arriving at a just ruling on the motion.

### III.

The court looks first to the plaintiff's statement of material facts as to which plaintiff contends there is no issue. Plaintiff submits the following list to the court:

1. Defendants owned and operated a gasoline retail facility known as "Gas Stop" and located at 9125 Wicker Avenue, St. John, Indiana, on August 2, 1985.

2. The subject outlet is a retail outlet as defined by 40 C.F.R. § 80.2(k).

3. On August 2, 1985, Ruth Mancos, an authorized representative of the United States Environmental Protection Agency, conducted an inspection of the subject outlet to determine compliance with section 211 of the Clean Air Act and the regulations promulgated thereunder at 40 C.F.R. Part 80.

4. While conducting the inspection, Ms. Mancos witnessed the fueling of a 1978 Chrysler Reliant, which was labeled "Unleaded Gasoline Only" at the fuel filler inlet, from a gasoline pump designated as dispensing leaded gasoline.

5. While conducting the inspection, Ms. Mancos witnessed the fueling of a 1980 Chevrolet Camaro Z–28, which was labeled "Unleaded Gasoline Only" at the fuel filler inlet, from a gasoline pump designated as dispensing leaded gasoline.

6. Each of these vehicles was designed to require unleaded gasoline, was required to bear a label at the fuel inlet stating "Unleaded gasoline only," and did have such labels attached.

7. These fuelings were performed by customers at self service pumps within view of a station attendant.

8. The gasoline in pumps with serial numbers 0439293 and 0439294 which fueled the subject vehicles dispensed leaded gasoline on August 2, 1985.

9. The individual gasoline pumps listed below did not have affixed labels stating "Unleaded gasoline" (for those pumps used to dispense unleaded gasoline) or "Contains lead anti-knock compounds" (for these pumps used to dispense leaded gasoline).

| Pump Serial Number | Type of Product Indicated |
|---|---|
| 0439296 | Premium unleaded |
| 0439296 | Premium unleaded |
| 0439295 | Unleaded |
| 0439295 | Unleaded |
| 0439294 | Leaded |
| 0439294 | Leaded |

10. Four of the pumpstands at the subject outlet did not have prominently displaced signs stating "Federal law prohibits the introduction of any gasoline containing lead or phosphorus into any motor vehicle labeled 'UNLEADED GASOLINE ONLY.'"

All proposed facts are supported by affidavits.

Pursuant to Local Rule 11, the court must assume these facts to be true except, and to the extent that, defendants in good faith controvert them in their "statement of genuine issues," as supported by appropriate affidavits and other supporting documents. *See* section II, *supra.*

Defendants claim in their response that the following issues are in dispute:

a. Whether the introduction of leaded fuel into vehicles designed for unleaded fuel at a self-service station was caused by the owner of the station or his employee;

b. Whether the notice required by 40 C.F.R. 80.22(d) was prominently and conspicuously displayed in the immediate area of each pump stand; and

c. Whether the labels required by 40 C.F.R. 80.22(e) were located so as to be readily visible to the customer.

In support of their contention that a genuine dispute exists with respect to these issues, defendants offer the affidavit of

defendant Robert Schilling as well as various photographs of the station and gas pumps.

In his affidavit, defendant Robert Schilling stated that on the date of the inspection, August 2, 1985, "the notice required by 40 C.F.R. § 80.22(d) was permanently affixed and prominently and conspicuously displayed in the area of each gas pump stand and were so equipped from the factory." Defendant further asserts in his affidavit that on that same date "the labels required by 40 C.F.R. § 80.22(e) were permanently affixed to the gas pump stands and were located as to be readily visible to the customer."

Defendants also offer photographs of gas pumps to prove that the notices and labels were present. Defendants offer no proof, however, nor even a bare assertion, that the photographs were taken on August 2, 1985. The photographs, therefore, only go to the credibility or weight of defendants' claim that the labels and notices were present, and do not conclusively prove that they were there on August 2, 1985.

Similarly, plaintiff offers proof in its reply that defendants' affidavit contradicts earlier statements by defendants as to when the labels and signs were purportedly affixed to the gas pumps. Even if these assertions of plaintiff are given full weight by the court, they only go to the credibility of defendants' assertion that the labels and notices were in place on August 2, 1985—they don't actually prove the labels and signs could not have been present on the date in question.

It is not the function of the court at the summary judgment stage to weigh the evidence and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court's role is only "to determine whether there is a genuine issue for trial." *Id.* Accordingly, the court declines to rule on the credibility of the contradictory affidavits respecting the presence or absence of notices and labels.

■ Because defendants assert and support by affidavit the claim that the labels and notices were present, in opposition to plaintiff's claim and affidavits asserting the labels and notices were not present, the court finds a genuine dispute exists with respect to these material facts. Accordingly, plaintiff's "undisputed facts" numbers 9 and 10 are adequately controverted, and plaintiff's motion for summary judgment on the labeling and notice allegations must be denied.

Plaintiff's third and final allegation, that defendants allowed the dispensing of leaded gasoline into two cars labeled "unleaded fuel only," is challenged by defendants on both factual and legal grounds.

Defendants deny plaintiff's fact number 7—that the improper fuelings occurred within view of a station attendant. Defendants offer both Robert Schilling's affidavit and a photograph to demonstrate that the view of the cashier—the only attendant at this self-service station—was obstructed by a piece of plywood in the cashier's booth window.

■ As with the photographs submitted respecting the labeling and notice issues, defendants' photograph of the cashier's booth is unaccompanied by proof that it shows the condition of the cashier's booth on August 2, 1985. Defendants' affidavit, however, raises an issue of fact as to whether or not the cashier could see the misfuelings and thus, by inaction, "allowed" the misfuelings to occur. Plaintiff's Fact Number 7, then, is adequately controverted by affidavit.

Defendants, however, also raise an issue of law by means of an affirmative defense. Defendants point out that 40 C.F.R. § 80.23(b)(1) allows the retailer to escape liability under § 80.22(a) "if he can demonstrate that the violation was not caused by him or his employee or agent." 40 C.F.R. § 80.23(b)(1). Defendants claim that because the misfueling "clearly" was "caused" by the owners of the cars and not by defendants or their employees, § 80.23(b)(1) relieves defendants of any liability they otherwise would face for allegedly allowing the misfueling.

The court is not persuaded that defendants properly construe § 80.23(b)(1). If, as

defendants claim, a retailer is not liable unless he himself "causes" misfueling, then a retailer can *never* be liable for merely "allowing" another party to commit the violation. This renders superfluous the word "allows" in § 80.22(a), contrary to favored principles of construction. *See Application of United States*, 563 F.2d 637, 642 (7th Cir.1977); *United States v. J S & A Group, Inc.*, 547 F.Supp. 20, 23 (N.D.Ill. 1982), *aff'd* 716 F.2d 451 (7th Cir.1983).

Furthermore, the Environmental Protection Agency in its reply brief asserts that defendants misconstrue § 80.23(b)(1), and "[a]n agency's construction of its own regulation binds a court in all but extraordinary cases." *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 411 (7th Cir. 1987).

Given the scheme of liability established by the regulations as a whole, the court is convinced that if § 80.23(b)(1) were intended to apply in cases like the one at bar, the violation to which that section refers must be the allowing of the misfueling, and not the misfueling itself. That is, even if defendants or their attendant in no way caused the misfueling of customer's cars, § 80.23(b)(1) relieves defendants of liability only if someone or something outside of defendants' control caused the attendant to let the misfuelings proceed without intervention. An example would be a torrential downpour that prevented the attendant from seeing the cars, or a sudden illness of the attendant that rendered him unable to function. Barring an external cause such as this, defendants may not be relieved of liability under § 80.23(b)(1).

Thus, the question of whether the attendant could see the misfuelings, and, if his view was blocked, the circumstances of that blockage, remain disputed material facts upon which liability hinges.

In sum, the court finds that summary judgment on the allegation that defendants allowed the introduction of leaded gasoline into cars labeled "Unleaded gasoline only" is not appropriate and plaintiff's motion is therefore DENIED.

Finally, the court notes that while defendants controverted plaintiff's proposed "undisputed facts" numbered 7, 9 and 10, defendants' response to the summary judgment motion raised no challenge to the remaining facts. Thus, pursuant to Local Rule 11, *see* section II of this order, *supra*, the court finds that facts numbered 1 through 6 and fact 8 from plaintiff's statement of material facts not in issue are uncontroverted and are therefore admitted to be true. Those facts need not be proved at trial.

### IV.

In conclusion, plaintiff's Motion for Summary Judgment is DENIED in all respects. The facts numbered 1 through 6 and fact 8 on plaintiff's statement of material facts not in issue, filed March 10, 1988 are TAKEN to be ADMITTED as true and need not be proved at trial.